**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                     Case No. 3:07-cv-353-J-32TEM

2001 CHEVROLET SUBURBAN SUV,
VIN 3GNEC16T81G117995, FL TAG
CY26B,

    Defendant.

___

**ORDER[1]**

Before the Court is Plaintiff's Motion For Summary Judgment (Doc. 14), filed by the government in this *in rem* forfeiture proceeding. Plaintiff United States of America filed a verified complaint for civil forfeiture *in rem* to enforce the provisions of 21 U.S.C. § 881(a)(4) for the forfeiture of the defendant vehicle ("Suburban")[2] alleging it "was used, or intended to be used, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance, and/or to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) as property,

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

[2] The defendant vehicle is a 2001 Chevrolet Suburban SUV, VIN 3GNEC16T81G117995, FL Tag CY26B.

real or personal, which constitutes or is derived from the proceeds traceable to a violation of 21 U.S.C. § 801 *et seq.*" (Doc. 1.) James Louis Wilson, Jr. has filed a verified claim to the Suburban (Doc. 7), and as claimant, has filed an answer and affirmative defenses to the complaint, (Doc. 8), and a response to plaintiff's motion for summary judgment. (Doc. 18.)

**I.    Facts**

The government's verified complaint is accompanied by a sworn statement submitted by Mark D. Pentolino, task force officer with the Drug Enforcement Administration ("DEA") and Columbia County, Florida, Sheriff's Office detective. (Doc. 1-2.) Pentolino's affidavit states that on July 1, 2006, the Columbia County Sheriff's Office responded to a 911 call at a residence in Lake City, Florida where deputies found claimant's father, James Louis Wilson, Sr. deceased. His wife had reported that Wilson, Sr., a convicted drug dealer, had been shot by an unidentified male. Pentolino stated that "Columbia County Detectives discovered approximately 500 grams of cocaine at the residence during the execution of a Florida state search warrant during the investigation. Also discovered at the residence was $279,930.00 in U.S. currency hidden in the engine compartment of the defendant vehicle in the garage. The currency was divided into bundles and concealed in a cloth laundry bag." (Doc. 1-2 at 2.)

Pentolino stated that based upon interviews from various sources, including

convicted drug dealers and confidential sources, he has learned that Wilson, Sr. was a multi-kilogram distributor of cocaine in the north Florida area; Wilson, Sr. gambled with large sums of money known to be profits from illegal drug sales; Wilson, Sr. conducted a cocaine distribution operation in Lake City; and Wilson Sr. had stated that he would keep money from drug transactions in safe deposit boxes at a bank in the name of his daughter, Rhonda Lynette Murphy. Pentolino stated that law enforcement conducted controlled and recorded purchases of cocaine from Wilson, Sr. at his residence, and that Wilson, Sr. was arrested on June 2, 2006 on Florida state charges for sale of cocaine within 1000 feet of a church. He bonded out the next day. On June 29, 2006, according to a confidential source, Wilson Sr. was seen packing cocaine in plastic baggies at his residence. Pentolino said he believed that the 2001 Chevrolet Suburban was used by Wilson Sr. to transport or facilitate the sale, receipt, possession or concealment of proceeds from the sale of cocaine and cocaine base, and/or constitutes or is derived from proceeds traceable to drug trafficking. (Id. at 10.)

The defendant vehicle is registered in the name Wilson, Sr.'s daughter Rhonda Murphy. In an interview on August, 28, 2006, Murphy's counsel represented to law enforcement officers that Wilson, Sr. placed money and assets, including the Suburban in Murphy's name and that these items were derived from drug proceeds, according to Pentolino. Murphy agreed to surrender her interest in all monetary

3

assets, property and vehicles in her name, which were obtained through drug related proceeds, stated Pentolino. "At the conclusion of the interview, Murphy agreed to have her brother, claimant James Wilson, Jr., self-surrender the 2001 Chevrolet Suburban to the Columbia County Sheriff's Office. Approximately 10 minutes after Murphy called Wilson, Jr., the vehicle was turned over to the Sheriff's Office." (Doc. 1-2 at 9-10.)

Claimant Wilson is one of Wilson Sr.'s sons. According to Pentolino, Wilson's criminal history includes a Florida conviction for possession of cocaine with intent to sell. (Doc. 1-2 at 8.) Wilson contends that the Suburban was a gift to him and thus is not eligible for forfeiture under 21 U.S.C. § 881(a)(6). (Doc. 7.)[3] In his answer to the complaint, Wilson asserts as a defense that the seizure was "without probable cause," and that the vehicle "was a gift to Claimant prior to July 1, 2006. Although others drove the vehicle, Claimant was unaware that said vehicle was allegedly being used for any illegal purpose." (Doc. 8 at 1-2.)

Wilson testified in a deposition that the Suburban originally belonged to his sister and that she gave him the vehicle in August, 2005. He said that the vehicle

---

[3] Filed *pro se*, Wilson's claim was not signed as verified, but rather bore claimant's signature following the certificate of service. Rule 6(C), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, requires a person who asserts a right of possession in property to file a verified statement of right or interest. The government has not challenged the verified claim for failing to meet the rule's requirements.

remained parked at his father's house because he had a suspended driver's license at the time and had another car. (Doc. 14-2 at 17, 26 (Wilson Dep. at 16, 25).) Wilson said that the truck was purchased from the proceeds of a lottery ticket that he had purchased "and some money grew and we had put it into some 18-wheelers, sold the 18-wheelers, and then got the truck." (Id. at 17 (Wilosn Dep. at 16).) He offered no competent evidence to support the lottery theory or the sale of the trucks. Though Wilson said his father and sister purchased the vehicle, "[a]ctually, I don't have any documentation on the purchase of the Suburban." (Id. at 21 (Wilson Dep. at 20).) He did not know how his sister paid for the vehicle. (Id. at 36 (Wilson Dep. at 35).)

Wilson said that immediately after his father's death, he made arrangements to lift the suspension of his driver's license, "and so after that I got the truck." ((Doc. 14-2 at 38-39 (Wilson Dep. at 37-38).)) At that point he purchased a battery, an oil change, and tires for the Suburban (id.), and drove the vehicle occasionally until it was seized on August 28, 2006. (Id. at 40 (Wilson Dep. at 39).) According to Wilson, title to the vehicle remained in his sister's name because she had paid the insurance. He produced receipts for the purchase of tires, battery and oil changes, costs all incurred after the death of Wilson, Sr. (Id. at 28 (Wilson Dep. at 27).)

Claimant Wilson acknowledged that he knew about significant sums of cash wrapped in a manila envelopes stored in bank safe deposit boxes registered in his sister's and father's names "for a very long time." But he said he had no idea about

5

the money found in the vehicle. Wilson admitted he knew his father sold drugs. "Yeah. I had a good idea. Well, everybody knew that he was, I guess, in that business." (Id. at 64-65 (Wilson Dep and 63-64).) He acknowledged that "maybe" the truck was a "hiding spot" for his father's money. (Id. at 55 (Wilson Dep. at 54).) He could recount no other source of the large sums of money, (Id. at 63 (Wilson Dep. at 62)), and did not dispute that it is illegal to hide drug money. (Id. at 55 (Wilson Dep. at 54).)

## II.     Standard of Review

Summary judgment in a civil forfeiture action is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); United States v. $291,828.00 In U.S. Currency, 536 F.3d 1234, 1236 (11th Cir. 2008). All reasonable inferences must be drawn in Wilson's favor. Id.; United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties, 941 F.2d 1428, 1437 (11th Cir. 1991).

## III.    Discussion

### A.     Forfeitability of the Suburban

Property is subject to civil forfeiture pursuant to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 21 U.S.C. § 881(a)(4) and 18 U.S.C. § 981(a)(1)(c).

As the government's theory of forfeiture "is that the property was used to commit or facilitate the commission of a criminal offense" under CAFRA, the government is required to establish by a preponderance of the evidence "that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). "The government 'may use both circumstantial evidence and hearsay,' and the district court should evaluate the evidence presented with 'a common sense view to the realities of normal life.'" United States v. $291,828.00, 536 F.3d at 1237 (citing United States v. Four Parcels of Real Property, 941 F.2d at 1440); but see United States v. $92,203.00 in U.S. Currency, 537 F.3d 504 (5th Cir. 2008)(hearsay evidence not permitted in deciding merits of CAFRA forfeiture case). "Moreover, the government need not show a relationship between the property and a particular drug transaction." United States v. Four Parcels of Real Property, 941 F.2d at 1440. The government may also use evidence gathered after the filing of the complaint for forfeiture to meet its burden. United States v. $291,828.00, 536 F.3d at 1237; 18 U.S.C. § 983(c)(2).

The government has established by a preponderance of the evidence that the Suburban had a substantial connection to Wilson, Sr.'s illegal drug transactions and that the vehicle was used to facilitate the transportation, sale, receipt, possession or concealment of illegal controlled substances. 21 U.S.C. § 881(a)(4). Further, the government has established by a preponderance of the evidence that the Suburban was more likely than not purchased or derived from proceeds traceable to a violation

7

of drug trafficking laws, as alleged. 18 U.S.C. § 981(a)(1)(C). The government showed, through its verified complaint and attached affidavit, that: (1) Wilson, Sr. was engaged in an extensive drug operation; (2) Wilson, Sr. and his daughter Murphy had no visible legitimate means of earning large sums of cash and that claimant has offered no competent evidence to explain how the Suburban was purchased; (3) Wilson, Sr., as is common among those who earn money selling illegal drugs, had a pattern of purchasing valuable objects and amassing large sums and placing them in others' names, including his daughter Murphy; (4) the vehicle was parked at Wilson, Sr.'s residence where repeated drug transactions were reported to have taken place; (5) Wilson, Sr. stored large sums of money in cash in safe deposit boxes; (6) Murphy agreed to surrender the Suburban and other assets which were obtained through drug related proceeds; and (7) nearly a quarter of a million dollars in cash bundled in a cloth laundry bag was hidden in the parked defendant Suburban at Wilson, Sr.'s residence. See United States v. $121,100.00 in U.S. Currency, 999 F.2d 1503, 1507 (11th Cir. 1993)(for purposes of civil forfeiture actions, a large sum of currency is "highly probative of a connection to some illegal activity"). The preponderance of the evidence establishes that the Suburban was used to facilitate Wilson, Sr.'s illicit cocaine operation, see United States v. Four Parcels of Real Property, 941 F.2d at 1441, and was derived from its proceeds. See United States v. 3402 53rd Street West, Bradenton, Fla., 178 Fed. Appx. 946, 948 (11th Cir. 2006); cf. United States v.

$242,484.00, 389 F.3d 1149, 1160-61 (11th Cir. 2004).

### B. Standing

Once the government establishes that the property is subject to forfeiture, "the burden shifts to the claimant[ ] to show, by a preponderance of the evidence that the property is not subject to forfeiture." United States v. Cleckler, 270 F.3d 1331, 1334 (11th Cir. 2001). "The claimant may meet this burden either by rebutting the government's evidence or by showing that the claimant is an innocent owner." Id.; see 18 U.S.C. § 983(d). As a threshold matter, Claimant Wilson must satisfy the requirements of Article III standing in order to contest this forfeiture action. United States v. $114,031.00 In U.S. Currency, 284 Fed. Appx. 754, 755 (11th Cir. 2008)(citing (United States v. $38,000.00 Dollars in U.S. Currency, 816 F.2d 1538, 1543-44 (11th Cir. 1987)). Claimant testified that he was "given" or "had" the vehicle in August 2005, though he did not drive it until his driver's license was restored, which was after the death of his father on July 1, 2006. He explained that the title remained in his sister's name because she had paid the insurance. It is undisputed that the Suburban was seized while claimant was in possession of and driving the vehicle. His injury is that he no longer has possession of the Suburban to drive. While the evidence is slim indeed, the Court finds that the record contains evidence that Wilson has standing to assert a claim to the Suburban.

### C. **Innocent Owner Defense**

By claiming that the vehicle was a "gift" prior to July 1, 2006, and that "[a]lthough others drove the vehicle, Claimant was unaware that said vehicle was allegedly being used for any illegal purpose," (Docs. 7 at 1; 8 at 2), Wilson apparently seeks to rely upon the innocent owner defense, 18 U.S.C. § 983(d), which he has the burden of establishing by the preponderance of the evidence. 18 U.S.C. § 983(d)(1).

Innocent ownership is an affirmative defense defined narrowly by the statute. By contending that the property was a "gift" prior to July 1, 2006, the date of his father's death, Wilson implicates the first standard of Section 983(d),[4] claiming to be an innocent owner who had a property interest at the time of the illegal conduct giving rise to the forfeiture. In this context, the innocent owner must establish he "(i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property," that he reasonably believed would not subject him or others to physical injury. 18 U.S.C. § 983(d)(2)(A)(i), (ii) and

---

[4] Inasmuch as Wilson does not contend that he was a bonafide purchaser of the Suburban, he may not proceed under the premise that he acquired the Suburban *after* the conduct giving rise to the forfeiture. United States v. $125,938.62, 537 F.3d 1287, 1293 n.3 (11th Cir. 2008)(citing 18 U.S.C. § 983(d)(3)(A); see also United States v. Brown, 509 F. Supp.2d 1239,1246 (M.D. Fla. 2007)( "a person who receives property subject to forfeiture as a 'gift' cannot be a bona fide purchaser for value.")(citing United States v. Kennedy, 201 F.3d 1324, 1335 (11th Cir. 2000)).

(iii).

First, to assert the defense, Wilson must qualify as an "owner" as defined by the statute, with an ownership interest in the Suburban "including a leasehold, lien, mortgage, recorded security interests, or valid assignment of an ownership interest." 18 U.S.C. § 983(d)(6)(A). Courts look to the property law of the state where the acts of forfeiture occurred to determine the extent of an owner's interest. United States v. 2003 Lamborghini Murcielago, Case No. 6:07-cv-726-Orl-19KRS, 2007 WL 4287674, at *4 (M.D. Fla. Dec. 6, 2007)(citing United States v. One Single Family Residence, 894 F.2d 1511, 1514 (11th Cir. 1990)).

Claimant Wilson has provided no evidence of his ownership interest such that he can assert the "innocent owner" defense. In Florida, to pass title by gift intervivos, the donor must surrender dominion over the res and intend to pass title in the res to the donee. Winterton v. Kaufman, 504 So.2d 439, 443 (Fla. 3d DCA 1987). In addition, to sustain the validity of a gift, there must be evidence of "an actual, constructive or symbolic delivery of the subject matter." J.R. Brooks & Son, Inc. v. Quiroz, 707 So.2d 861, 862 (Fla. 3d DCA 1998); see also Reiner v. Reiner, 400 So.2d 1292, 1293 (Fla. 4th DCA 1981)("three elements must be shown to support a finding of gift: donative intent, delivery of possession and surrender of dominion and control"). "A delivery which does not confer the present right to reduce the res into possession of the donee is insufficient." Ritter v. Shamas, 452 So.2d 1057, 1059 (Fla. 3d DCA

11

1984).

According to Wilson, the Suburban remained parked at his father's residence where his sister also stayed while Wilson drove another vehicle, and then while his license was suspended. The vehicle was at all times titled to and insured by his sister Murphy; was occasionally driven by others, including his father and his sister; was not driven by claimant until *after* July 1, 2006; and was used to hide a quarter of a million dollars in drug money belonging to Wilson, Sr. Wilson provides only his sparse, self-serving assertion that his sister gave him the car, offering no other evidence to support his claim. At best, Wilson was a nominal owner of the vehicle, exercising no dominion and control over it, and thus, for this reason, is disqualified from asserting the innocent owner defense. See 18 U.S.C. § 983(d)(6)(B)(iii); see also United States v. 2001 Honda Accord, 245 F. Supp.2d at 609-10.

Second, Wilson, a convicted drug dealer himself, admits that he had knowledge that his father was engaged in drug dealing, though he maintains that he stayed away from the operation and never asked, because it was not his business. When considering whether a claimant has proven by the preponderance of the evidence, that he is entitled to an "innocent owner" defense under section 983(d)(2), "'actual knowledge' may be proven by inference from circumstantial evidence suggesting a high probability of a property's involvement with drug trafficking, and . . . a property owner may not 'turn a blind eye' toward such evidence and still claim 'innocent owner'

12

status under CAFRA." United States v. One 1988 Checolet 410 Turbo Prop Aircraft, 282 F. Supp.2d 1379, 1383 (S.D. Fla. 2003). The burden of proving actual absence of knowledge is on the claimant seeking to establish the affirmative "innocent owner" defense. Id., at 1385 (citing 81 U.S.C. § 983(d)(1) and United States v. Four Million, Two Hundred Fifty-Five Thousand, 762 F. 2d 895, 907 (11th Cir. 1985)).

Claimant has failed to show that any issue of fact exists that either he did not know that the Suburban was used to facilitate his father's drug operation (or that it was derived from its proceeds), or that he did all that could reasonably be expected under the circumstances to end the criminal use of the vehicle once he learned of it. See 18 U.S.C. § 983(d)(2)(A). The record presents overwhelming circumstantial evidence demonstrating Claimant Wilson's awareness that the car was either used to facilitate criminal activity or was derived from proceeds traceable to a violation of drug trafficking laws.

Upon due consideration, it is hereby

**ORDERED**:

1. Plaintiff's Motion For Summary Judgment (Doc. 14) is **GRANTED**.

2. Defendant 2001 Chevrolet Suburban SUV, VIN 3GNEC16T81G117995, FL Tag CY26B is forfeited to the United States of America under the provisions of 21 U.S.C. § 881 and 18 U.S.C. § 981 for disposition according to law.

3. Based upon United States' Response to the Court's Order To Show

Cause (Doc. 13), the Court's Order To Show Cause (Doc. 12) is **DISCHARGED**.

    4      The Clerk of the Court is directed to enter **JUDGMENT** in favor of Plaintiff United States of America and to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 9th day of February, 2009.

                                                            TIMOTHY J. CORRIGAN
                                                            United States District Judge

jl.
Copies to:
Counsel of Record
Pro se party